Marshall, C. J.
 

 This action originated in the common pleas court of Erie county as an action for wrongful death upon the following pertinent facts:
 

 Buell was a physician, 38 years old, practicing his profession in the vicinity of Brown helm village in Erie county, and familiar with the conditions of the crossing of the highway over the tracks of the New York Central Railroad Company near that village. On March 14, 1921, while driving a Ford coupe, he met his death at said
 
 *42
 
 crossing. At the trial of the case the jury awarded a verdict of $37,500. This judgment was reversed by the Court of Appeals, the three judges being unanimously of the opinion that the verdict was against the weight of the evidence, upon the issue of the negligence of the railroad company, and upon that and other grounds that court rendered final judgment and dismissed the petition. We have carefully examined the record upon the issue of the negligence of the railroad company and are of the opinion that there was evidence from which the negligence of the railroad company could be inferred, and, while the Court of Appeals was entirely within its rights in reversing the judgment upon the weight of the evidence on that issue, there being some evidence tending to support the verdict upon that issue, the Court of Appeals would not be justified in rendering final judgment and dismissing the petition, upon that ground alone. By such action that court would have usurped the functions of the jury, hence, under the rule declared in
 
 Nyiry
 
 v.
 
 Modern Brotherhood,
 
 92 Ohio St., 387, 110 N. E., 943, it was clearly the duty of the Court of Appeals upon that issue to remand the cause for another trial.
 

 It is not necessary to discuss this feature of the instant case at length, because the case presents another issue for determination by this court, which is decisive of the case. The Court of Appeals, two members only concurring, held that the common pleas erred in overruling the motion of the defendant for a directed verdict in its favor on the ground that the plaintiff’s evidence raised a reasonable presumption of negligence on the part
 
 *43
 
 of the decedent directly contributing to his injury, which presumption was not dispelled by any evidence offered in the cause. It only remains to be determined whether the Court of Appeals correctly ruled upon the issue of contributory negligence, and whether it might properly render final judgment upon the concurrence of two of the members of that court.
 

 It is contended by counsel for plaintiff in error that the finding of the Court of Appeals upon the issue of contributory negligence involved the weight of the evidence, and, therefore, under the provisions of Section 6, Article IV, of the Constitution, required the concurrence of all of the judges of that court. With this view we are not in accord. Weighing evidence involves the determination of the probative effect of the testimony of witnesses who testify for and against an issue of fact. In cases where the record presents no conflicting evidence, there can be no necessity for weighing-evidence. It is in such case only necessary to determine the legal effect of. undisputed testimony. In such case a legal question only is presented, and, even if all of the judges of the Court of Appeals had expressed a contrary opinion, it would still be entirely proper for this court to examine such testimony and to reach its own conclusions as to the legal effect thereof. This brings us to an examination of the facts as disclosed by plaintiff’s testimony.
 

 Dr. Buell was a man in the prime of life, in good health, in possession of all of his faculties, and, so far as the record discloses, of average physical strength. When he approached the railroad cross
 
 *44
 
 ing his car was evidently not working well. He had stopped at the foot of the grade, and was observed by the witness Crombie to be working with the machinery. This was evidently some time before the accident, because Crombie passed on, and did not learn of the accident until an hour later. The approach grade was rather steep, and there were several sets of tracks at the point of the accident. The first track was a storage track, and somewhat lower than the main west-bound track. When the automobile reached the main west-bound track the car stalled, with the front wheel just over the north rail. Just how long the car was in that position the evidence does not clearly disclose, but a west-bound train was the cause of the death. The record discloses that the. track at that point was straight to the eastward a distance of approximately 2 miles. The whistling post for that particular crossing was 1,300 feet to the east. Plaintiff introduced only one eyewitness of the occurrence, and the testimony of that witness (John Hemmer) is as follows:
 

 ‘‘Q. Now, you may state whether or not you saw anybody get out of that machine? A. Well, I seen—when the train whistled for the crossing I seen a man—seen this automobile standing there on the track, and after that— I knew that fast train was due—that is, No. 81 was due—and I looked up, and I seen the smoke coming, and knew she was coming, and I thought he must know, if there was anybody in there, and they ought to get out of there; then, after that, when the train whistled, I seen a man get out of the automobile and walk in front, and that was the last I seen of him.”
 

 
 *45
 
 The same witness further testified that he saw smoke of the train fully a mile away, and then afterwards saw the train in its westward course; that he not only heard the whistle at the whistling post but later the warning whistles with repeated blasts. He states that he could not see the engine hit the automobile, because of the smoke right in front of the engine; all he knew was that, after the train had passed the crossing, the automobile was gone. The testimony of Hemmer and other witnesses that the whistle was sounded at the whistling post, and that the other warning whistles were repeated and continuous up to the time the locomotive passed the crossing is uncontroverted.
 

 A determination whether the testimony introduced by the plaintiff raises a presumption of the negligence of the decedent rests upon the following facts and inferences: The automobile was a light car, which a strong man could easily have pushed down the grade after releasing the brake. Such action would have involved only a moment of time.. The negligence of the railroad company, if it existed, must only be that of failing to stop the train before reaching the crossing, and it is quite clear that the warning signal was given to the decedent 1,300 feet east of the crossing. This gave ample time to push the car off the track and to seek a. place of safety. The repeated blasts of the whistle, after discovering decedent’s peril, were also sufficient, according to the testimony of even plaintiff’s witnesses, to have permitted the decedent to abandon his car and seek a place of safety. The fact that the locomotive engineer should have discovered decedent’s peril earlier than he did, if such was
 
 *46
 
 the fact, affords no excuse on the part of the decedent for failing to observe the approaching locomotive. An automobile stalled upon a track should cause the owner and driver to look both ways for approaching trains, and his failure to do so, if he did fail, is a well-established ground of contributory negligence.
 

 The requirement to look and listen was early established by this court, and, although the rule has been somewhat clouded by certain decisions, it still stands as an established principle, and this rule would become only an empty form if the decedent in this case, after discovering his position of peril, was not bound to make any effort to extricate himself from danger. For a discussion of the rule as to the duty to look and listen we refer "to four well-known cases:
 
 Bellefontaine Ry. Co.
 
 v.
 
 Snyder,
 
 24 Ohio St., 670;
 
 Cleveland, Columbus & Cincinnati Ry. Co.
 
 v.
 
 Crawford, Adm’r.,
 
 24 Ohio St., 631, 15 Am. Rep., 633;
 
 C., C., C. & I. Ry. Co.
 
 v.
 
 Elliott,
 
 28 Ohio St., 340; and
 
 N. Y., C. S St. L. Rd. Co.
 
 v.
 
 Kistler, 66
 
 Ohio St., 326, 64 N. E., 130.
 

 The latest expression of this court on that subject is found in
 
 C., C., C. & St. L. Ry. Co.
 
 v.
 
 Lee, Adm’r.,
 
 111 Ohio St., 391, 145 N. E., 843. That case has many points of similarity to the case at bar. The rule declared by the unanimous concurrence of all members of this court who participated in the case states:
 

 “1. In an action where the negligence of the defendant is admitted or proven, and contributory negligence on the part of the plaintiff is an issue, and the plaintiff’s evidence raises a reasonable presumption of negligence on his part, directly
 
 *47
 
 contributing to his injury, the burden is east upon him to furnish proof, as a part of his case in chief, tending to dispel such inference, and a failure to furnish any such proof will defeat a recovery by him and it then becomes the duty of the court to direct a verdict.
 

 “2.
 
 In an action involving the negligence of the defendant and contributory negligence of the plaintiff when, giving to every portion of the plaintiff’s evidence the most favorable interpretation in favor of the absence of negligence on his part, such evidence under such interpretation is susceptibles of no other reasonable inference than that of negligence on his part, directly contributing to his injury, the question of contributory hegligencé ceases to be a question of fact for the determination of the jury, but, for the purposes of the case, becomes an uncontroverted fact for a declaration by the court of the law applicable thereto. It is the duty of the court in such case to direct a verdict.”
 

 In that case the Court of Appeals had upon the first trial of the case reversed on the weight of the evidence, and, upon another verdict being rendered to the same effect, expressed the opinion that it might not again reverse on the weight of the evidence, and, for that reason, affirmed the judgment. One member only of that court dissented, on the ground that a verdict should have been directed at the close of plaintiff’s testimony. The spirit of the decision of this court in that case is that, if the decedent had exercised his faculties of sight and hearing, he would have known of the approach of the train in time to have avoided in
 
 *48
 
 jury. If the failure to exercise those faculties while approaching the crossing, or the failure to respond to the suggestion of danger resulting therefrom, raised a presumption of negligence on the part of the decedent in that case, then
 
 a fortiori
 
 the stalled automobile on the track, with abundant time to observe the approaching train and to seek a place of safety, must be held to raise a like presumption. In
 
 Railway
 
 v.
 
 Snyder, supra,
 
 it is stated in the syllabus:
 

 “It is the duty of a person approaching, crossing, or standing upon a railroad track, where cars are being run, to look out for approaching cars, and if he fails to do so, he is
 
 prima facie
 
 guilty of such negligence as will prevent his recovery for injuries occasioned to him, while so crossing or standing upon the track, by the mere carelessness, negligence, or unskillfulness of the employes of the company, not amounting to willfulness on their part.”
 

 It is claimed by counsel for plaintiff in error that the only evidence of contributory negligence is found in the testimony of the engineer, who testified on behalf of the railroad company. The answer to this proposition is that the best evidence upon which a presumption of contributory negligence can arise is to be found in the circumstances of the case. These facts are that the eyewitness Hemmer did not see the decedent leave his position in front of the automobile upon the track. The body was found some distance westwardly from the crossing, and on the north side of the track upon which the train had passed. The decedent must have been struck by the locomotive, because
 
 *49
 
 the automobile was tossed to one side, not more than 15 feet distant from the crossing, while the body was found at a distance of at least 40 feet, by the testimony of the most favorable witness, and at a distance of possibly 150 feet, by the testimony of another witness. Decedent could not have met his death by being struck by his own automobile, because both legs were found to have been run over.
 

 Counsel for plaintiff in error have urged that the decedent was in a situation of danger, and should not be held to the exercise of the same care that prudent persons would exercise where no danger is present. This well-established rule has no application to the facts of the instant case. There was no choice of hazards. Dr. Buell must be held to have known that he was in a place of danger, and this fact must have been known to him.a sufficient length of time to have enabled Mm to seek safety in any one of many ways.
 

 It is not claimed in the petition, neither is there any testimony tending to show a violation of any statute or any willfulness on the part of those in charge of the train. Neither does the testimony of any witness introduced by the defendant aid the plaintiff or help rebut the presumption of decedent’s negligence. It is claimed by counsel for plaintiff in error that at the time Dr. Buell met Ms death he was trying to save property, and possibly to prevent a derailment of the train. The rules of human conduct governing such an emergency have been declared in two former decisions of this court:
 
 Pennsylvania Co.
 
 v.
 
 Langendorf,
 
 48 Ohio St., 316, 28 N. E., 172, 13 L. R. A., 190, 29 Am. St. Rep., 553,
 
 *50
 
 and
 
 Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co.
 
 v.
 
 Lynch,
 
 69 Ohio St., 123, 68 N. E., 703, 63 L. R. A., 504, 100 Am. St. Rep., 658. Those cases establish the doctrine that, while it is not negligence
 
 per se
 
 for one to voluntarily risk his own safety and life in an effort to rescue another from impending danger, and that the question whether a given course of conduct becomes contributory negligence is one of mixed law and fact to be submitted to the jury, nevertheless, if one rashly and unnecessarily exposes himself to danger, and a rescue is attempted under such circumstances, or in such manner as to constitute recklessness, the presumption of contributory negligence arises. Upon the facts of each of those cases a recovery was permitted. In treating the question in the instant case as one of law, we recognize the well-settled rule, repeatedly declared by this court in former adjudications, that the evidence must be viewed in the light most favorable to the contentions of the plaintiff, and that every portion of plaintiff’s evidence must be given the most favorable interpretation in favor of the absence of negligence on his part, and, measured by those standards, we have reached the conclusion that plaintiff’s evidence is susceptible of no other reasonable inference than that of recklessness on the part of decedent. All of the testimony introduced by plaintiff below, and all of the circumstances of the case, as shown by plaintiff’s testimony, present an uncontroverted fact for a declaration by the court of the law applicable thereto.
 

 Contributory negligence is an affirmative defense, and the testimony of the defendant in support of
 
 *51
 
 such, issue is always a question of fact to be submitted to the jury, but a different rule applies where the plaintiff’s own testimony raises the presumption, and such presumption is not rebutted by any other evidence in the case or by the attendant circumstances.
 

 For the foregoing reasons it was the duty of the trial court to have directed a verdict for defendant at the close of plaintiff’s testimony.
 

 The judgment of the Court of Appeals will therefore be affirmed.
 

 Judgment affirmed.
 

 Jones and Day, JJ., concur.
 

 Kinkade, J., not participating.