Hart, J.
 

 In the opinion of this court the answer of the jury, to interrogatory No. 5, to the effect that the operators of the train maintained a lookout on the tracks ahead of the train, together with the fact that there was no testimony from which it could be inferred that any failure to look for the approach of an automobile to the railroad crossing was a proximate cause of the collision, disposes of this claim of negligence adversely to the plaintiff.
 

 This leaves for our consideration only the question: Did the failure of the railroad company to maintain a railroad crossarm warning sign at the crossing with lettering inscribed on the crossarms as required by law cause the death of plaintiff’s decedent? A failure upon the part of a railroad company to observe the re
 
 *343
 
 quirements of Section 8852, General Code, relating to the maintenance of such a sign is negligence per se.
 

 This statute provides as follows:
 

 “At all points where its road crosses a public road at a common grade, each company shall erect a sign, with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and warn persons to be on the lookout for the locomotive. A company which neglects or refuses to comply with this provision shall be liable in damages for all injuries which
 
 occur to persons or property from such neglect or
 
 refusal.” (Italics supplied.)
 

 By the terms of the statute itself a violation of the same creates liability only when the failure to comply is shown to be the cause of the injury — in this case the death of the plaintiff’s decedent. This was an issue which the plaintiff was required to prove by affirmative evidence. A search of the record fails, in our opinion, to disclose the proof of any facts from which an inference may be drawn that the failure to maintain proper lettering on the crossarms of the railroad sign, as required by law, was the cause of the collision and death of plaintiff’s decedent.
 

 The evidence unmistakably showed that two highway signs were maintained by the highway department of the state, a railroad sign with crossarms was maintained by the railroad company, as warnings of the crossing, and a man stood in the center of the highway waving his arms to warn travelers on the highway of the danger of the approaching train. For some unaccountable reason Bushey failed to observe any of these warnings and not until she observed the train crossing the highway ahead of her did she realize that a collision between her automobile and the train might occur. These facts, in our opinion, do not raise any inference that Bushey would have seen
 
 *344
 
 lettering on the railroad sign, which sign structure she did not see and which in itself was a universally recognized warning of the presence of railroad tracks on the highway, even if the lettering had been insufficient to comply with the statute.
 

 Not only does the amended petition itself allege that the accident resulting in the death of plaintiff’s decedent was caused by the failure of Bushey to maintain a lookout ahead, that she disregarded the warning signs and markers, and that she failed to look or listen before attempting to cross-the railroad crossing, but Bushey, upon cross-examination, testified that she saw a sign with the name of the village of Bachman upon it on the side of the highway, and then she continued her testimony as follows:
 

 ‘ ‘ Q. Did you see any other signs along there — along the road? A. No, I didn’t.
 

 “Q. No signs of any kind? A. No.
 

 i i
 
 # * # # #
 

 “Q. As you were going through this community, where were you when you first realized there was a north bound train coming across the highway? A. I would say I was about four car lengths back when I saw it coming across.
 

 “Q. About four car lengths from the place where it was coming off the highway? A. It was very confusing. It came out from nowhere to my estimation. ’ ’
 

 In the opinion of the court, if any inference is to be drawn from the testimony of Bushey that she did not even see the crossarm warning sign, as above stated, it is that the failure to properly letter the sign, if there was such a failure, had nothing to do with causing the death of Imogean L. Cobb, Jr., and was not a proximate cause of her death.
 

 If Bushey had seen the signs themselves as they existed at the crossing, an inference would probably
 
 *345
 
 arise that she would likewise have seen the letters on the sign if they had been plainly visible, but since her testimony was to the effect that she saw none of the signs of warning present at the crossing, an inference must arise that she was not looking as she neared the crossing, in which event the condition of the railroad sign would not have any bearing upon the question of proximate cause of the collision, or the liability of the railroad company. Since the object of a warning sign at a railroad crossing is to warn travelers of the existence of the railroad crossing, the absence of such sign does not make the railroad company whose duty it is to maintain the sign liable to one who due to inattention strikes a train on the crossing.
 
 Gallagher
 
 v.
 
 Montpelier & Wells River Rd. Co.,
 
 100 Vt., 299, 137 A., 207, 52 A. L. R., 744;
 
 Morier
 
 v.
 
 Hines, Dir. Genl.,
 
 81 N. H., 48, 122 A., 330. Of course, the negligence of Bushey was not imputable to plaintiff’s decedent, but if the negligence of the former was the sole proximate cause of the collision and death of such decedent, the plaintiff cannot recover from the railroad company.
 

 In the brief of counsel for plaintiff it is stated:
 

 “Defendant contends that the jury’s finding as to proximate cause is based on an inference that the automobile driver would have seen the sign had it been lettered. On the contrary it is plaintiff’s contention that the jury found that had the sign been properly maintained according to law that the automobile driver
 
 might have seen it
 
 or
 
 could have seen it
 
 in time to properly exercise vigilance in ascertaining whether defendant was about to pre-empt the crossing in question.” (Italics supplied.)
 

 The evidence must have tended to prove, not that the automobile driver “might have seen” the sign or “could have seen it” if properly lettered, but that the driver would have seen or probably would have
 
 *346
 
 seen the sign if it had been properly lettered. There was no snch evidence.
 

 The question of proximate cause of an injury or death is ordinarily one of fact for the jury, but the burden of proof is on the plaintiff, and if there is no evidence to support the affirmative of that issue it becomes one of law for the court.
 
 Lake Shore & M. S. Ry. Co.
 
 v.
 
 Liidtke, an Infant,
 
 69 Ohio St., 384, 69 N. E., 653;
 
 Buell, Admx.,
 
 v.
 
 New York Central Rd. Co.,
 
 114 Ohio St., 40, 150 N. E., 422;
 
 Detroit, Toledo & Ironton Rd. Co.
 
 v.
 
 Rohrs,
 
 114 Ohio St., 493, 151 N. E., 714;
 
 Penna. Rd. Co.
 
 v.
 
 Rusynik,
 
 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538;
 
 Penna. Rd. Co.
 
 v.
 
 Moses,
 
 125 Ohio St., 621, 184 N. E., 8;
 
 New York Central Rd. Co.
 
 v.
 
 Stevens, Admr.,
 
 126 Ohio St., 395, 185 N. E., 542;
 
 Gumley, Admr.,
 
 v.
 
 Cowman,
 
 129 Ohio St., 36, 193 N. E., 627;
 
 Penna. Rd. Co.
 
 v.
 
 Townsend,
 
 130 Ohio St., 554, 200 N. E., 772;
 
 Patton, Admx.
 
 v.
 
 Penn. Rd. Co.,
 
 136 Ohio St., 159, 24 N. E. (2d), 597.
 

 Under the state of the record the trial court should have sustained the motion of the defendant railroad company to direct a verdict in its favor. The court having failed to sustain such motion, the jury found a verdict in favor of the plaintiff and it was then the duty of the court to sustain a motion of the railroad company to render judgment in its favor notwithstanding the verdict.
 

 The judgment of the Court of Appeals is reversed and final judgment is rendered for the defendant The Baltimore & Ohio Railroad Company.
 

 Judgment reversed.
 

 Matthias, Stewart, Turner and Taet, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.